UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:09-CR-73-CHB-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JOHN W. PETERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Boom (D.E. 52), the Court considers reported violations of supervised release conditions by Defendant John Walter Peters. This is his second revocation.

**I.**

Judge Thapar entered Judgment against Defendant in August 2010 after Defendant pleaded guilty to Conspiracy to Manufacture a Mixture or Substance Containing Methamphetamine. 21 U.S.C. § 841(a)(1), 846. Defendant was sentenced to 158 months of imprisonment (later reduced to 135 months) followed by three years of supervised release. Defendant was released on December 26, 2019.

In October 2020, the United States Probation Office ("USPO") reported in a 12A noncompliance report that on September 15, 2020, Defendant provided a urine specimen that tested positive via instant testing for amphetamine and methamphetamine. "Peters was informed of the results, and he denied any use of methamphetamine." The specimen was sent for confirmation testing, which also indicated methamphetamine. The USPO requested that no action be taken at the time. Defendant had been in outpatient treatment since January 9, 2020.

The USPO said it would inform the treatment provider of the test result and Defendant would be required to continue in treatment. Judge Boom approved the request that no action be taken. D.E. 39.

On November 2, 2020, the USPO initiated revocation proceedings with a report that stated:

> On October 27, 2020, the defendant was arrested by the Laurel County Sheriff's Department, and charged in Laurel County District Court, London, Kentucky, case number 20-F-801, with the following: Charge 1) Possession of a Controlled Substance, First Degree, First Offense - Methamphetamine (KRS 218A.1415, a Class D felony); Charge 2) Possession of Marijuana (KRS 218A.1422, a Class B misdemeanor ); and Charge 3) Possession of Drug Paraphernalia (KRS 218A.500(2), a Class A misdemeanor). . . . Peters was administratively released from the Laurel County Detention Center on the same date. On October 28, 2020, Peters failed to appear for arraignment, and a bench warrant was subsequently issued.

This matter was later indicted in Laurel case 21-CR-03. Defendant pleaded guilty to first-degree possession of a controlled substance, first offense, and was sentenced to three years of imprisonment, suspended. This report charged three violations: (1) Grade B commission of a crime; (2) Grade C possessing methamphetamine, marijuana, and drug paraphernalia; and (3) Grade C failure to notify the Probation Office of the arrest.

On January 12, 2021, the USPO released an Addendum to the earlier report, which states:

> On January 3, 2021, the defendant was arrested by the Laurel County Sheriff's Department, and charged in Laurel County District Court, London, Kentucky, case number 21-M-16, with the following: Charge 1) Fleeing or Evading Police, 2nd Degree (On Foot) (KRS 520.100, a Class A misdemeanor), and Charge 2) Resisting Arrest (KRS 520.090, a Class A misdemeanor).

Defendant later pleaded guilty to both charges and was sentenced to 360 days in jail, conditionally discharged. The Addendum thus included a fourth charged violation, Grade C commission of a crime.

Defendant stipulated to all four violations. *See* D.E. 45. His release was revoked, with twelve months of imprisonment and 24 months of supervision, with a 180-day inpatient drug treatment program at the outset. D.E. 48. Defendant was released again on December 30, 2021. From January 5 to July 2, 2022, Defendant successfully underwent inpatient substance-abuse treatment. Immediately thereafter, he was referred to Windows of Discovery for aftercare outpatient substance abuse treatment. He successfully completed that program on January 31, 2023. Defendant's supervision was set to expire on December 29, 2023.

## II.

On June 21, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report:

> On June 13, 2023, Peters was arrested by the Laurel County Sheriff's Office, and charged in Laurel County District Court, London, Kentucky, case #23-F-328, with Charge 1) Trafficking in a Controlled Substance, First Degree, Second or Subsequent Offense (2 grams or more of methamphetamine) (KRS 218A.1412, a Class B felony); Charge 2) Trafficking in a Controlled Substance, Third Degree, Second or Subsequent Offense (20 or more dosage units; drug unspecified) (KRS 218A.1414, a Class D felony); Charge 3) Receiving Stolen Property, $1,000 < $10,000 (KRS 514.110(3)(b), a Class D felony); and Charge 4) Resisting Arrest (KRS 520.090, a Class A misdemeanor).
>
> The attached citation contains the following narrative:
>
> [T]he Laurel County Sheriffs Office received an anonymous tip stating there [were] multiple stolen items at 57 Ray Johnson Rd. Deputy Turner along with several London City Police Department Officers responded to that address and began an investigation. On the property there [were] (2) utility trailers that had the VIN removed []. The property owner showed up and told Deputy Turner that her father John Peters and his buddy Joshua Caldwell had brought the trailers there and she heard Caldwell say they were stolen. The homeowner then advised that Peters is staying in her old bedroom and that she wanted us to remove any items in there that might be stolen or harmful to her. Deputy Turner recovered a large bag of crystal like substance that was laying in plain sight on the bed. During this time Peters showed up to the residence. Peters began acting irate and began to act aggressive toward law enforcement. Peters was detained and placed in the back of Deputy Turners car. While in the car he began moving around a lot

> and Deputy Turner opened the door to see what he was doing inside. Between Peters legs and in his hand was a large bag of crystal like substance and several pills that he was attempting to conceal. Peters then exited the vehicle in an aggressive manner and began to resist and pull away. Deputy Turner then deployed his taser and the males hands were handcuffed behind his back. Once in Deputy Turner's car the male began banging his head violently into the glass window and rear cage. Deputy Turner then initiated his emergency equipment and was en route to the Laurel County Sheriffs Office where EMS was staged to treat the males self inflicted injuries.

Violation #1 charges a violation of the condition that prohibits Defendant from committing another federal, state, or local crime and the condition that prohibits unlawful possession of a controlled substance. Because the June 13, 2023 arrest includes a felony drug-trafficking charge, this is a Grade A violation.

Over a year later, on July 30, 2024, the USPO followed up with an Addendum to the Report. According to the Addendum:

> On September 15, 2023, a Laurel County Grand Jury, London, Kentucky, returned indictment number 23-CR-227, charging the defendant with Count 1) Trafficking in a Controlled Substance, First Degree, First Offense (More than Two Grams Methamphetamine) (KRS 218A.1412, a Class C felony); Count 2) Trafficking in a Controlled Substance, Third Degree, First Offense (Less than [120] Doses) (KRS 218.1414, a Class A misdemeanor); Count 3) Resisting Arrest (KRS 520.090, a Class A misdemeanor); Count 4) Persistent Felony Offender, First Degree (KRS 532.080(3)).
>
> On July 22, 2024, the defendant appeared in Laurel County Circuit Court, London, Kentucky, for sentencing following a plea of guilty to Count 1) Trafficking in a Controlled Substance, First Degree, First Offense (More than Two Grams Methamphetamine); and Count 3) Resisting Arrest. He was sentenced to a term of imprisonment of Count 1) five (5) years, and Count 3) 60 days, to run concurrently. All remaining Counts were dismissed.
>
> The defendant has remained in Kentucky state custody since June 13, 2023.

The Addendum does not include any additional violations.

4

After Defendant was released from state custody, the Court conducted an initial appearance pursuant to Rule 32.1 on May 5, 2025. D.E. 55. Defendant conceded probable cause regarding the alleged violation and waived his right to a preliminary hearing. *Id*. The United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on May 9, 2025, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 57. Defendant competently entered a knowing, voluntary, and intelligent limited stipulation to the violation. *Id.* Specifically, he admitted violating the condition prohibiting commission of another federal, state, or local crime. He admitted to committing the state crimes of trafficking two grams or more of meth and resisting arrest. For purposes of Rule 32.1 proceedings, Defendant admitted this factual basis for the violation as described in the Report and Addendum. The United States thus established the crime-commission portion of Violation #1 under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to a Class C drug felony. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade A violation. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade A violation, Defendant's range, under the Revocation Table of Chapter Seven, is 30 to 37 months. USSG § 7B1.4(a). Given the two-year statutory maximum, his effective Guidelines Range is a flat 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Due to his drug trafficking convictions, Defendant faces no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**IV.**

At the final hearing, the parties presented a jointly recommended penalty: revocation with eighteen months of incarceration, with no additional supervised release to follow.

According to the government, the penalty on this second revocation needs to be higher than the twelve months he received last time. A second revocation is a more severe breach of the Court's trust. However, the government sought an eighteen-month sentence (below the Guidelines Range of 24 months) without additional supervision due to several factors. Defendant's supervision would have expired back in December 2023. Instead, he has spent about 22 months in prison on the state charges. The government suggested that Defendant was at an age where he poses less of a threat to the public. Because he completed a six-month inpatient drug-addiction program (followed by outpatient treatment), he has the tools to fight any

6

drug addiction. Defendant also pleaded guilty at both the state and federal levels, so he had accepted responsibility.

The defense agreed with the government's presentation, and Defendant declined to make any statement concerning the sentence.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. Although Defendant technically only pleaded guilty to the criminal component of the violation (not the drug-possession component), his trafficking necessarily included possession of illegal drugs. The only exception to mandatory revocation here would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies.

The presence of a Grade A violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant cooked methamphetamine both to sell and to use. He was thus a danger to his community. The

meth that is available now is even more dangerous, and Defendant needs to keep himself far away from it.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. It is striking how similar the 2023 violations are to the 2021 violations. Defendant's first arrest, in 1997, involved meth use and fleeing and evading police—the same conduct underlying the 2021 revocation. Now, as part of the 2023 violations, Defendant trafficked meth and resisted arrest. It is a concerning pattern that suggests a risk of committing more crimes. The trafficking also happened after Defendant received the benefits of inpatient and outpatient treatment.

Another factor focuses on opportunities for education and treatment. This factor was significant last time, as the parties successfully argued for intensive treatment. Defendant received that treatment, and the parties have not argued for more.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). This is Defendant's second revocation for serious criminal conduct. A return to drug trafficking while on supervision is unusual and severe. Nevertheless, Defendant pleaded guilty in state Court and was confined for 22 months. He has also accepted responsibility here.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the parties recommend eighteen months' incarceration. This is below the Guidelines Range of 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

First, this penalty is an increase from the twelve months of incarceration (plus six months of inpatient treatment) imposed last time. Second, Defendant has accepted responsibility and received punishment for his behavior. Although the state matter is separate, these proceedings were held in the shadow of Defendant's state sentence, for which he served almost 22 months.

For the reasons discussed herein, the Court finds the recommended sentence sufficient, but not greater than necessary, to address the pertinent penalty factors. With some reluctance, the Court also adopts the recommendation that no further supervision be imposed. Probation has already invested its best rehabilitation options (inpatient and outpatient treatment). And there is not much Probation can do to prevent unforeseeable criminal activity. Although Defendant still potentially poses a danger to the public, an additional year and a half in prison will provide protection and deterrence.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of the crime-commission component of the alleged violation.

2.    Revocation with a term of imprisonment of eighteen months, with no additional supervision to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 12th day of May, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge